IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 129,160

STATE OF KANSAS,
*Appellee*,

v.

ROBERT EDWARD SMITH,
*Appellant*.

SYLLABUS BY THE COURT

The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, an appellate court has no obligation to do so.

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Submitted without oral argument April 9, 2026. Opinion filed April 24, 2026. Affirmed.

*Sam Schirer,* of Kansas Appellate Defender Office, was on the brief for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  On February 14, 2025, this court affirmed Robert Smith's convictions arising from the 2016 home invasion and murder of Donna O'Neal but vacated his sentence after concluding that the district court improperly included his 2003 criminal-threat conviction in his criminal history score.

1

On remand, the district court recalculated Smith's criminal history score without considering the 2003 criminal-threat conviction, reducing Smith's criminal history score from A to B. Based on the corrected criminal history score, the court resentenced Smith to life without parole eligibility for 618 months on the felony-murder count, along with a consecutive 231-month determinate sentence on the remaining counts under the Kansas Sentencing Guidelines Act (KSGA).

Smith appeals from that resentencing, arguing for the first time on appeal that the KSGA violates his federal and state constitutional right to a jury trial because a judge, rather than a jury, determines prior convictions used to enhance punishment. We do not address the merits of these unpreserved constitutional claims because the governing law is already well settled and forecloses relief. Smith also argues the journal entry from his resentencing should be corrected to include 627 more days of jail credit accrued between sentencing and resentencing. A recent addition to the record by the State, however, reflects the district court filed a nunc pro tunc journal entry on January 26, 2026, correcting the jail time award by adding the 627 days between sentencing and resentencing. This nunc pro tunc order renders Smith's second issue moot.

FACTUAL AND PROCEDURAL BACKGROUND

*Underlying convictions and first appeal*

A jury convicted Smith of first-degree felony murder, aggravated burglary, attempted aggravated robbery, two counts of aggravated assault, and criminal possession of a weapon arising from the October 2016 home invasion and killing of Donna O'Neal. The first jury trial ended in a mistrial, but a second trial resulted in convictions on all counts. At the original sentencing, the district court overruled Smith's objection to the use of a 2003 criminal-threat conviction to calculate his criminal history score, found his criminal history to be A, and imposed a life sentence without parole eligibility for 653

2

months on the off-grid felony-murder count, together with a consecutive determinate sentence of 241 months on the five remaining grid counts. Smith appealed.

On direct appeal, this court affirmed Smith's convictions but held that his 2003 criminal-threat conviction could not be used to calculate his criminal history score. We relied on K.S.A. 21-6810(d)(9), which provides that prior convictions under a statute later found unconstitutional by an appellate court may not be used for criminal history scoring purposes. We adopted a "literal reading" of that provision, meaning reckless criminal-threat convictions cannot be included because this court previously held that portion of the statute unconstitutional in *State v. Boettger*, 310 Kan. 800, 822, 450 P.3d 805 (2019). Because Smith challenged the use of this prior conviction in calculating his criminal history score and the State failed to prove that his 2003 conviction arose under a constitutional portion of the statute after *Boettger*, we held the district court erred in including it in Smith's criminal history score. We vacated the sentence and remanded the matter "with directions not to include Smith's 2003 criminal threat conviction in Smith's criminal history score." *State v. Smith*, 320 Kan. 62, 91, 563 P.3d 697 (2025).

*Proceedings on remand*

The mandate issued March 18, 2025, and resentencing occurred on May 2, 2025. The district court began by summarizing the remand and noting the original presentence investigation report assigned Smith a criminal history score of A based on three person felonies, one of which was the criminal-threat conviction the Supreme Court had now excluded. The district court concluded that without that conviction, Smith's criminal-history score was B. Both parties agreed B was the correct score under the mandate.

The State argued resentencing was essentially "an arithmetic question" and asked the court to keep the same sentencing choices—aggravated terms within the grid box and consecutive structure—while recalculating only those numbers affected by the A-to-B

change. Defense counsel responded that because the Supreme Court had vacated all sentences, "the entire subject matter of sentencing" was again before the court. For this reason, the defense renewed its motion for departure filed at the original sentencing and argued broad equitable considerations in support, including that the first trial ended in a hung jury and retrial had involved contested identification and evidentiary issues. The State objected, claiming counsel's arguments fell outside the scope of remand. The district court allowed the argument, at least effectively as a proffer, but ultimately denied Smith's renewed departure motion, stating that "nothing has changed" and that no substantial and compelling basis justified departure. Relevant here, Smith did not argue at resentencing that Kansas' general use of criminal history is unconstitutional.

The district court then resentenced Smith and recalculated the sentencing ranges for the two counts affected by the change in criminal history from A to B. On count 1, first-degree murder, the court imposed life imprisonment with parole eligibility after 618 months, explaining that the aggravated number had decreased from 653 months because Smith's criminal history was now B. On count 2, aggravated burglary, the court imposed the aggravated term of 162 months rather than the previously imposed 172 months. The court reimposed the remaining grid sentences, ordered them to run consecutive to the off-grid sentence, and announced a controlling sentence of 849 months.

Smith appeals from the sentences imposed on remand.

ANALYSIS

Smith raises two issues on appeal from resentencing. First, he argues the district court violated his federal and state constitutional jury-trial rights by increasing his punishment based on judicial findings about his prior convictions. Second, he argues the journal entry should be corrected to include 627 more days of jail credit accrued between sentencing and resentencing.

4

I.    *Constitutional right to a jury trial*

The scope of Smith's appeal on this issue is narrow and should be clarified at the outset. Notably, he does not challenge the district court's compliance with the Supreme Court's limited remand or argue that resentencing should have been an open-ended proceeding. Instead, he advances a new and broader theory:  that the KSGA violates the Sixth Amendment to the United States Constitution and section 5 of the Kansas Constitution Bill of Rights because it allows a judge, rather than a jury, to determine prior convictions used to enhance punishment.

Smith raises these constitutional arguments for the first time on appeal. Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Although limited exceptions to this rule exist, see *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019), and Smith invokes two of them, application of an exception does not compel review. The decision to consider an unpreserved issue remains a prudential one. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

Here, we decline to use any potentially applicable exception to review Smith's unpreserved constitutional claims because the governing law is already well settled and forecloses relief.

A. *Sixth Amendment to the United States Constitution*

Smith's federal claim rests on the familiar rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), where the United States Supreme Court held that any fact increasing a defendant's punishment beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. But *Apprendi* expressly preserved an exception for prior convictions. That exception

originates from *Almendarez-Torres v. United States*, 523 U.S. 224, 247, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), where the Court held that the Sixth Amendment does not require a jury to find the fact of a prior conviction used to enhance a sentence. Likewise, we have held that the KSGA does not violate the Sixth Amendment. See *State v. Ivory*, 273 Kan. 44, 44, 41 P.3d 781 (2002).

Smith acknowledges that *Almendarez-Torres* remains controlling law and that Kansas courts lack authority to overrule decisions of the United States Supreme Court. Yet he then argues that the prior-conviction exception is unsound. In support, he cites *Erlinger v. United States*, 602 U.S. 821, 837-38, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024), in which the Court acknowledged a recent history of separate concurring and dissenting opinions seeking to revisit the exception created in *Almendarez-Torres*. As Smith concedes, however, the majority in *Erlinger* did not overrule *Almendarez-Torres* or cast doubt on it in a way that changes its precedential force. Thus, it appears his argument is aimed at preserving the issue for potential future review rather than obtaining relief in this court.

B. *Section 5 of the Kansas Constitution Bill of Rights*

Smith also argues the KSGA violates his state constitutional right to a jury trial because it permits judicial fact-finding of prior convictions that enhance a defendant's sentence without first requiring the State to prove those convictions to a jury beyond a reasonable doubt. Smith asserts that section 5 of the Kansas Constitution Bill of Rights requires a jury, not a judge, to determine penalty-enhancing prior conviction findings. Section 5 provides that "[t]he right of trial by jury shall be inviolate." Section 5 preserves the jury trial right as it existed at common law in 1859 when the Kansas Constitution was ratified. *State v. Albano*, 313 Kan. 638, 640-41, 487 P.3d 750 (2021).

In *Albano*, we addressed whether the use of a defendant's criminal history—without a finding by a jury—to increase the defendant's sentence violated section 5 of the Kansas Constitution Bill of Rights. We examined Kansas common law and noted that, in Kansas, juries have traditionally determined guilt, and the role of the court is to determine punishment and issues relevant to it, including a defendant's criminal history. Finding no authority to support the contention that Kansas had adopted a common-law rule inconsistent with this traditional division of functions when the Kansas Constitution was adopted in 1859, we held that "[s]ection 5 of the Kansas Constitution Bill of Rights does not guarantee defendants the right to have a jury determine the existence of sentence-enhancing prior convictions under the revised Kansas Sentencing Guidelines Act." 313 Kan. 638, Syl. ¶ 4.

Smith acknowledges *Albano* recently rejected the same section 5 challenge to criminal history he makes here but asks us to overturn that decision. In support, he argues stare decisis should carry less force where structural protections in the Kansas Constitution are at stake. He contends that if section 5 truly preserves all jury rights existing at common law in 1859, then penalty-enhancing prior convictions should have been submitted to the jury.

But Smith's arguments fail to identify any legal basis to depart from *Albano*. The historical and structural considerations he advances were already examined and rejected in that decision. *Albano* squarely held that, at the time the Kansas Constitution was adopted, the determination of punishment—including the consideration of a defendant's criminal history—fell within the province of the court, not the jury. 313 Kan. at 639. Smith offers no new authority or analysis that undermines that conclusion. Accordingly, *Albano* remains controlling, and Kansas law continues to treat criminal history as a sentencing matter properly determined by the court.

II.  *Jail credit*

At resentencing, the prosecutor said that Smith had accrued "an additional 627 days of jail credit" since the original sentencing and that this time should be awarded. Defense counsel did not object to that portion of the State's calculation. The parties separately disputed whether Smith should also receive credit for a pretrial municipal-court period of detention, but that earlier dispute is not part of the current appeal. The district court then stated that Smith would receive credit for time served "allowed by statute or case law," but the subsequent journal entry did not reflect the 627 additional days between sentencing and resentencing.

On appeal, Smith asks us to remand the case with instructions for the district court to correct this clerical error by filing an amended journal entry awarding him jail credit for the time that he spent incarcerated between his sentencing and resentencing. The State agrees that Smith was entitled to jail credit for the time between his sentencing and resentencing and advised us in its brief that the jail credit "issue will be moot shortly because a nunc pro tunc order to give the defendant his agreed-upon jail credit is in process and will be filed upon its completion." A recent addition to the record by the State reflects the district court filed a nunc pro tunc journal entry on January 26, 2026, correcting the amount of jail time awarded by adding the 627 days between sentencing and resentencing. This nunc pro tunc order renders Smith's second issue moot. No additional nunc pro tunc order or remand is required.

Judgment of the district court is affirmed.